[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 26, 2007
THOMAS K. KAHN
CLERK

Nos. 06-13702 & 06-15006
Non-Argument Calendar

_____

D. C. Docket Nos.
06-00076-CV-T-24TBM & 06-00076-CV-T-30-TBM

SHEET METAL WORKERS' INTERNATIONAL
ASSOCIATION LOCAL 15, AFL-CIO,

                                             Plaintiff-Appellee,

versus

LAW FABRICATION, LLC,

                                             Defendant-Appellant.

_____

Nos. 06-16185 & 07-10356
Non-Argument Calendar

_____

D. C. Docket No.
06-00565-CV-T-30-TGW

LAW FABRICATION, LLC,
a Florida limited liability corporation,

Plaintiff-Appellant,

versus

LOCAL 15 OF THE SHEET METAL WORKERS
INTERNATIONAL ASSOCIATION, AFL-CIO,

Defendant-Appellee.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

**(June 26, 2007)**

Before ANDERSON, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

In this consolidated appeal, Law Fabrication, LLC ("Law Fabrication") challenges the enforcement of an interest arbitration award in favor of Sheet Metal Workers' International Association Local 15 ("Local 15"). Law Fabrication had a collective bargaining agreement with Local 15, which provided that if negotiations for a new agreement became deadlocked, the parties would submit the dispute to binding arbitration. Local 15 obtained an arbitration award pursuant to this clause

2

and brought suit in federal district court to enforce the new agreement. Meanwhile, Law Fabrication brought an action in state court, seeking to vacate the award. Local 15 removed that action to federal court. The district court enforced the award and awarded contractual attorney's fees to Local 15. Law Fabrication has appealed all of those decisions.

We first consider the district court's enforcement of the arbitration award. "On an appeal of a district court's decision to confirm or vacate an arbitration award, we review the district court's resolution of questions of law de novo and its findings of fact for clear error." Rintin Corp. S.A. v. Domar, Ltd., 476 F.3d 1254, 1258 (11th Cir. 2007). The district court had jurisdiction over Local 15's enforcement suit under section 301 of the Labor Management Relations Act. 29 U.S.C. § 185(a). Section 301 gives federal courts jurisdiction to enforce arbitration awards made pursuant to collective bargaining agreements. Dist. No. 1–Marine Eng'rs Benefit Ass'n v. GFC Crane Consultants, Inc., 331 F.3d 1287, 1290 (11th Cir. 2003).

When a party brings suit to enforce an arbitration award, the key issue is whether the parties are bound by an enforceable arbitration agreement. Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1109 (11th Cir. 2004) ("[U]nless an arbitration agreement otherwise stipulates, a court is empowered only to determine

3

the 'substantive' issue of arbitrability."); GFC Crane Consultants, 331 F.3d at 1290. Once the court determines that the issue is arbitrable, its "review of a labor arbitration award is limited to a determination of whether an award is irrational, whether it fails to draw its essence from the collective bargaining agreement or whether it exceeds the scope of the arbitrator's authority." Osram Sylvania, Inc. v. Teamsters Local Union 528, 87 F.3d 1261, 1263 (11th Cir. 1996). In the absence of one of those defects, the court must defer to the arbitrator's decision, and may not review the merits of the award. See United Paperworkers v. Misco, Inc., 484 U.S. 29, 38, 108 S. Ct. 364, 371 (1987) ("[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision."); Osram, 87 F.3d at 1263.

In the instant case, Local 15 sought arbitration pursuant to an interest arbitration clause, which allows an arbitrator to impose new collective bargaining terms on the parties when certain contractual conditions are met. Interest arbitration clauses are generally enforceable, except when the clause itself was a product of interest arbitration. Sheet Metal Workers Local 57 Welfare Fund v. Tampa Sheet Metal Co., 786 F.2d 1459, 1461 (11th Cir. 1986).

The original CBA between Local 15 and Law Fabrication contained an

4

enforceable interest arbitration clause.  The CBA provides, in relevant part:

**Effective Date & Duration**
Section 1.  This Agreement and Addendum attached hereto shall become effective on the first day of May 2001, and remain in full force and effect until the last day of June 30, 2004 and shall continue in force from year to year thereafter unless written notice of termination is given not less than ninety (90) days prior to the expiration date.  In the event such notice of termination is served, the Agreement shall continue in force and effect until an impasse in negotiations is reached.
. . .
The 1991 standard form of union agreement and all addenda in place at the commencement of this agreement shall be part of this agreement provided they do not conflict with any of the provisions of this agreement.

Then, the Standard Form of Union Agreement ("SFUA"), attached to the main

agreement and signed separately by Law Fabrication, provided:

**Article 10**
Section 8.  In addition to the settlement of grievances arising out of interpretation or enforcement of this Agreement as set forth in the preceding sections of this Article, any controversy or dispute arising out of the failure of the parties to negotiate a renewal of this Agreement shall be settled as hereinafter provided:
(a) Should the negotiations for a renewal of this Agreement of [sic] negotiations regarding a wage/fringe reopener become deadlocked in the opinion of the Union representative(s) or of the Employer('s) representative(s), or both, notice to that effect shall be given to the National Joint Adjustment Board.
. . .
The dispute shall be submitted to the National Joint Adjustment Board pursuant to the rules as established and modified from time to time by the National Joint Adjustment Board.  The unanimous decision of said Board shall be final and binding upon the parties,

reduced to writing, signed and mailed to the parties as soon as possible after the decision has been reached. There shall be no cessation of work by strike or lockout unless and until said Board fails to reach a unanimous decision and the parties have received written notification of its failure.

. . .

(d) Unless a different date is agreed upon mutually between the parties or is directed by unanimous decision of the National Joint Adjustment Board, all effective dates in the new agreement shall be retroactive to the date following the expiration date of the expiring agreement.

This part of the SFUA contains a standard interest arbitration clause. It provides that when negotiations about a new CBA become deadlocked (in the opinion of either Local 15 or Law Fabrication), the dispute is to be referred to the National Joint Adjustment Board ("NJAB"). The NJAB is then empowered to impose a new agreement. Only if the NJAB fails to reach a unanimous decision does Local 15 have the option to strike.

Local 15 and Law Fabrication began negotiating a new CBA before June 30, 2004. Law Fabrication declared an impasse on September 8, 2004. Local 15 informed Law Fabrication that it was submitting the dispute to the NJAB, and on June 6, 2005 initiated an action before the NJAB. Law Fabrication received notice of the hearing and an opportunity to appear and testify. Law Fabrication argued in writing that Local 15's submission to arbitration was untimely, but did not attend the hearing. The NJAB issued its unanimous decision on September 15, 2005,

6

imposing a new CBA on Law Fabrication and Local 15. The original CBA plainly gave the NJAB the authority to arbitrate this dispute. As a result, it was arbitrable, and the NJAB's decision must be enforced.

Law Fabrication's attempts to escape the plain language of the interest arbitration clause are unavailing. First, Law Fabrication argues that when the CBA expired on September 8, 2004 (when Law Fabrication declared an impasse), the interest arbitration clause expired with it, and the NJAB therefore had no authority to arbitrate this dispute or impose a new CBA. This argument is foreclosed by precedent. In Sheet Metal Workers Local 57 Welfare Fund v. Tampa Sheet Metal Co., 786 F.2d 1459 (11th Cir. 1986), we dealt with a nearly identical interest arbitration clause. The union filed for arbitration the day after the CBA expired. We held that the obligation to arbitrate survived the expiration of the contract. Id. at 1461. The obligation to arbitrate therefore similarly survived the expiration of the CBA between Local 15 and Law Fabrication.

Notably, Law Fabrication's interpretation of the agreement conflicts with its plain language. The agreement states that "all effective dates in the new agreement [imposed by the NJAB] shall be retroactive to the date following the expiration date of the expiring agreement." If the interest arbitration requirement did not survive the expiration of the CBA, the need for retroactivity would never

7

arise, and this language would be superfluous. See Tampa Sheet Metal, 786 F.2d at 1461 (enforcing clause after expiration in part because of "the provision for retroactive dates"). Moreover, because the CBA expires when an "impasse" is reached, while the obligation to arbitrate does not arise until "deadlock," Law Fabrication's interpretation of the agreement would render the obligation to arbitrate virtually meaningless, and must be rejected.

It is not unusual for an arbitration clause to extend beyond the technical expiration date contained in a CBA. See, e.g., Nolde Bros. v. Bakery & Confectionary Workers Union, 430 U.S. 243, 255, 97 S. Ct. 1067, 1074 (1977) (holding that an arbitration clause survived the expiration of the CBA, even though the agreement was silent as to survival). And of course, in Tampa Sheet Metal, we concluded that a nearly identical clause extended beyond the expiration date of the CBA. The clause is enforceable, the dispute was arbitrable, and the arbitrator's award is therefore enforceable. Moreover, because Law Fabrication had notice and an opportunity to be heard, "[t]he fact that it did not appear and participate in the arbitration proceedings before the Joint Board was of no legal effect." Tampa Sheet Metal, 786 F.2d at 1461.

Law Fabrication next argues that a typo in the arbitration clause renders it unenforceable. The clause says that the obligation to arbitrate is triggered when

there is a deadlock in "negotiations for a renewal of this Agreement of [sic] negotiations regarding a wage/fringe reopener." It should have said that the obligation is triggered when "negotiations for a renewal of this Agreement <u>or</u> negotiations regarding a wage/fringe reopener." Because the language read literally is nonsensical, and because the intent of the parties is perfectly clear from the face of the agreement, the clause is enforceable when there is a deadlock in "negotiations for a renewal of this Agreement," which was the case here.

Law Fabrication next contends that the arbitration award should not be enforced because Local 15 made an untimely submission to arbitration. But matters of procedure, including the timeliness of the submission, are for the arbitrator to decide in the first instance. <u>Howsam v. Dean Witter Reynolds</u>, 537 U.S. 79, 85, 123 S. Ct. 588, 592 (2002); <u>Klay</u>, 376 F.3d at 1109; <u>Aluminum, Brick & Glass Workers Int'l Union v. AAA Plumbing Pottery Corp.</u>, 991 F.2d 1545, 1550 (11th Cir. 1993) ("Once it is determined that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator.") (quoting <u>John Wiley & Sons, Inc. v. Livingston</u>, 376 U.S. 543, 557, 84 S. Ct. 909, 918 (1964)) (punctuation omitted). The arbitrator's decisions regarding procedural issues are entitled to deference. <u>See Howsam</u>, 537 U.S. at

84, 123 S. Ct. at 592; <u>Klay</u>, 376 F.3d at 1109. Here, Law Fabrication submitted its timeliness objection to the arbitrator, which implicitly rejected the argument when it issued the award on September 15, 2005. Law Fabrication now simply seeks a reexamination of that decision on the grounds of legal mistake. Because that decision was for the arbitrator to make, Law Fabrication cannot escape enforcement of the award on timeliness grounds. <u>Klay</u>, 376 F.3d at 1109.[1]

Next, Law Fabrication contends that Local 15 had to obtain an order to compel arbitration before proceeding to the NJAB. This argument conflicts with our decision in <u>Tampa Sheet Metal</u>, where we enforced the arbitration award even though the same contractual provision was involved and the union proceeded directly to the NJAB. <u>See</u> <u>Tampa Sheet Metal</u>, 786 F.2d at 1460. It is also not supported by the language of the agreement, which does not require an order to compel arbitration, and instead tells parties to proceed directly to the NJAB.

Finally, Law Fabrication argues that the dismissal of its prior declaratory action had a preclusive effect on the instant action. Before Local 15 obtained the award from the NJAB, Law Fabrication filed a preemptive action seeking a declaration that it was not bound by any collective-bargaining agreement with

---

[1] Law Fabrication has never argued that the enforcement suit is untimely, either in the district court or on appeal.

10

Local 15. The district court dismissed the suit for lack of subject matter jurisdiction, concluding that since there was no allegation that a CBA had been violated, it had no jurisdiction under section 301. Law Fabrication, LLC v. Local 15 of the Sheet Metal Workers Int'l Assoc. Bd. of Trustees, AFL-CIO, 396 F. Supp. 2d 1306, 1309 (M.D. Fla. 2005) (citing Textron Lycoming Reciprocating Engine Div. v. United Automobile, Aerospace, and Agricultural Implement Workers of America, 523 U.S. 653, 118 S. Ct. 1626 (1998)).

Because Law Fabrication did not appeal that dismissal, we need not, and expressly do not, decide whether the district court's disposition of the prior action was correct. For purposes of this action, it is clear that the prior dismissal had no preclusive effect. Doctrines of claim and issue preclusion do not apply because no judgment was rendered on the merits. See CSX Transp., Inc. v. Brotherhood of Maintenance of Way Employees, 327 F.3d 1309, 1317 (11th Cir. 2003). And the law of the case doctrine does not apply because, inter alia, it was a different case. See Williams v. Morgan, 478 F.3d 1316, 1321 (11th Cir. 2007).[2] Law

---

[2] In any event, the district court's determination that it had subject matter jurisdiction in the instant case was in no way inconsistent with its earlier determination that the suit was not yet ripe. The dismissal relied on the fact that no violation of the CBA had yet occurred or was alleged, such that the threshold requirement for section 301 jurisdiction was absent. See Law Fabrication, 396 F. Supp. 2d at 1309. When Local 15 brought its suit to enforce the award, Local 15 did allege that Law Fabrication was violating the CBA: namely, that it was refusing to comply with the arbitral award. See Sheet Metal Workers' Int'l Assoc., Local 15, AFL-CIO v. Law Fabrication, LLC, 459 F. Supp. 2d 1236, 1243 (M.D. Fla. 2006). The district court did not make inconsistent rulings: the underlying facts changed, leading to a different jurisdictional result.

Law Fabrication's argument is especially puzzling because the district court's taking of jurisdiction in the instant case allowed Law Fabrication the opportunity to do what the prior dismissal had foreclosed: argue that the

Fabrication's other arguments against enforcement of the arbitral award are equally without merit.

Law Fabrication levels the same arguments against the district court's resolution of its suit to vacate the award, removed from state court. That case was properly removed to federal court under the doctrine of complete preemption, because the state law claims all depended on the interpretation of the CBA. See Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 405-06, 108 S. Ct. 1877, 1881 (1988) (complete preemption under section 301 where "the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement"). We affirm the resolution of that action, for the same reasons we decide that the arbitration award should be enforced.

Law Fabrication also appeals the district court's award of contractual attorney's fees. We review the district court's interpretation of the contract de novo. Natco, L.P. v. Moran Towing of Florida, Inc., 267 F.3d 1190, 1193 (11th Cir. 2001). We then review the district court's assessment of attorney's fees for abuse of discretion. Id. at 1196.

The agreement plainly requires Law Fabrication to reimburse Local 15 for

_____

CBA was invalid (this time as a defense to enforcement of the arbitral award). See Textron Lycoming, 523 U.S. at 658, 118 S. Ct. at 629 (noting that party may assert contract invalidity as defense in action to enforce contract under section 301). We emphasize, again, that the jurisdictional issue presented in the first case is not before us, as that dismissal was not appealed. We hold simply that the prior dismissal had no preclusive effect on the instant action.

attorney's fees incurred in enforcing the NJAB's decision. It states: "In the event of non-compliance within thirty (30) calendar days following the mailing of a decision of a Local Joint Executive Board, Panel or the National Joint Adjustment Board, a local party may enforce the award by any means including proceedings in a court of competent jurisdiction in accord with applicable state and federal law. If the party seeking to enforce the award prevails in litigation, such party shall be entitled to its costs and attorney's fees in addition to such other relief as is directed by the courts." This clause specifically applies to actions brought to enforce decisions by the "National Joint Adjustment Board." The contract therefore provides for contractual attorney's fees under the facts of this case.

Nor has Law Fabrication shown that the district court abused its discretion in setting the amount of attorney's fees. Law Fabrication simply asserts, in a general way, that the fees were not properly documented, without providing any specific reasons why the district court erred. Such an argument is plainly insufficient to show an abuse of discretion. See Norman v. Housing Auth. of Montgomery, 836 F.2d 1292, 1301 (11th Cir. 1988).

Law Fabrication's only cogent objection to the award is that it included time spent litigating the attorney's fee issue: so-called "fees on fees." We decline to interpret the contractual attorney's fee provision as excluding this category of

13

expenses. The provision is broad, and contains no such limitation. Moreover, excluding such fees would effectively require Local 15 to bear part of the cost of enforcing the arbitration award: namely, the cost of obtaining fees. See AFGE, Local 3882 v. Federal Labor Relations Auth., 994 F.2d 20, 23 (D.C. Cir. 1993) (noting that if fees on fees are not included, parties entitled to attorney's fees "might then have to fund part of their attorneys' uncompensated labor"); see also Prandini v. National Tea Co., 585 F.2d 47, 53 (3d Cir. 1978) ("If an attorney is required to expend time litigating his fee claim, yet may not be compensated for that time, the attorney's effective rate for all the hours expended on the case will be correspondingly decreased."). Requiring Local 15 to bear that cost would conflict with the clear purpose of the attorney's fee provision, which is to shift fees incurred in enforcing an award to the recalcitrant party: here, Law Fabrication.

Indeed, federal statutory fee-shifting provisions ordinarily authorize fees on fees. See, e.g., Comm'r v. Jean, 496 U.S. 154, 162, 110 S. Ct. 2316, 2321 (1990) (collecting cases); Thompson v. Pharmacy Corp. of America, Inc., 334 F.3d 1242, 1245 (11th Cir. 2003) (section 1988). We see no reason to interpret this contractual fee-shifting provision any differently. All of Law Fabrication's cases refusing to award fees on fees arose under Florida statutory fee-shifting

14

provisions, which sometimes disallow such fees.  See, e.g., McMahan v. Toto, 311 F.3d 1077, 1085 (11th Cir. 2002); State Farm Fire & Cas. Co. v. Palma, 629 So. 2d 830 (Fla. 1993).  As this is a section 301 suit arising under federal law, see Textile Workers Union of America v. Lincoln Mills of Alabama, 353 U.S. 448, 456, 77 S. Ct. 912, 918 (1957), those cases are inapposite.  Accordingly, the district court did not abuse its discretion in refusing to exclude fees on fees as a categorical matter.

In sum, under standard principles of labor dispute arbitration, the NJAB's award must be enforced.  In addition, Local 15 is entitled to the award of attorney's fees.  As to all of the consolidated cases, the district court is AFFIRMED.