Editha T. AMIZOLA, Individually and as Curatrix of Dominador Amizola

v.

DOLPHIN SHIPOWNER, S.A. et al.

No. CIV.A. 04–2256.

United States District Court, E.D. Louisiana.

Oct. 19, 2004.

Paul A. Bonin, Bonin Law Firm, New Orleans, LA, Les Anthony Martin, Law Office of Les A. Martin, Neil Franz Nazareth, Maritime Law Center for Personal Injury, Gretna, LA, Kevin Amadeus Rieth, Kevin Amadeus Rieth, Attorney at Law, New Orleans, LA, for Editha T Amizola, individually and as curatrix of Dominador Amizola, plaintiff.

Robert Hugh Murphy, Peter Brooks Sloss, Peter B. Tompkins, Murphy, Rogers & Sloss, New Orleans, LA, for Dolphin Hellas Shipping S.A., Ilenao MV, West of England Ship Owners Mutual Insurance Association, Dolphin Shipowner SA, owner of the vessel, the M/V Ilenao, West of England Shipowners Mutual Insurance Association (Luxembourg), Carras Hellas SA, defendants.

## ORDER AND REASONS

LEMMON, District Judge.

**IT IS HEREBY ORDERED** that Editha T. Amizola's motion to remand the case to the 25th Judicial Court for the Parish of Plaquemines, State of Louisiana, is **DENIED.** (Document # 8.)

**IT IS FURTHER ORDERED** that the defendants' motion to stay the proceedings and compel arbitration is **GRANTED,** and the case is **STAYED** pending arbitration in the Republic of the Philippines. (Document # 6.)

## I. BACKGROUND

On June 24, 2004, Dominador Amizola (Dominador) was injured while performing his work as a second officer aboard the M/V ILENAO, which is owned and operated by Dolphin Shipowner, S.A. (Dolphin). Dominador was employed aboard the M/V ILENAO pursuant to a standard form employment contract issued by the Philippine Overseas Employment Administration (POEA), a division of the Department of Labor and Employment of the Republic of the Philippines.[1] Dominador entered into a standard POEA approved contract with Carras (Hellas) S.A. in Manila on March 29, 2004, and the contract was verified and approved by the POEA on March 30, 2004. The standard terms provide for mandatory arbitration in the Philippines of all claims, including tort claims before the NLRC or voluntary arbitrators.[2]

1. The POEA was created for the following purposes:
 a. promote and develop overseas employment opportunities in cooperation with relevant government institutions and the private sector;
 b. establish the environment conducive to the continued operations of legitimate and responsible private agents; and
 c. afford protection to Filipino workers and their families, promote their interest and safeguard their welfare.
 To effectuate these policy goals, the POEA regulates principals and projects, recruitment, advertisement and placement; contract processing and travel documentation; employment standards; the filing of grievances; and provides worker assistance and welfare services. *Marinechance Shipping Ltd. v. Sebastian,* 143 F.3d 216, 219 n. 12 (5th Cir.1998).
 Section 3 of Executive Order No. 247 issued by the President of the Republic of the Philippines in 1987 includes the following power and functions of the POEA in relevant part:
 (d) Exercise original and exclusive jurisdiction to hear and decide all claims arising out of an employer-employee relationship or by virtue of any law or contract involving Filipino workers for overseas employment including the disciplinary cases; and all pre-employment cases which are administrative in character involving or arising out of violation of recruitment laws, rules and regulations including money claims arising therefrom, or violation of the conditions for issuance of license or authority to recruit workers;

 . . . . .

 (*l*) Institute a system for ensuring fair and speedy disposition of cases involving violation of recruitment rules and regulations as well as violation of terms and conditions of overseas employment.

The Governing Board of the POEA formed a Tripartite Technical Working Group representing the government, the manning agencies representing the employers, the labor unions, religious groups, and civic groups representing the seafarers. Affidavit of Ruben T. DelRosario, defendants' exh. 1 at 5.

2. In 2000, the POEA issued Memorandum Circular No. 09, the Amended Standard Terms and Conditions Governing the Employment of Filipino Seafarers on Board Ocean-Going Vessels. *Id.* The memorandum circular contains, *inter alia,* dispute settlement procedures which lay down the jurisdiction of the voluntary arbitrators of the National Labor Relations Commission (NLRC). *Id.*

 Section 29 of the contract of employment addresses "Dispute Settlement Procedures" and provides:
 In cases of claims and disputes from this employment, the parties covered by a collective bargaining agreement shall submit the claim or dispute to the original and exclusive jurisdiction of the voluntary arbitrator or panel of arbitrators. If the parties are not covered by a collective bargaining agreement, the parties may at their option submit the claim or dispute to either the original and exclusive jurisdiction of the National Labor Relations Commission (NLRC), pursuant to Republic Act (RA) 8042 otherwise known as the Migrant Workers and Overseas Filipinos Act of 1995 or to the original and exclusive jurisdiction of the voluntary arbitrator or panel of arbitrators. If there is no provision as to the voluntary arbitrators to be appointed by the parties, the same shall be appointed from the accredited voluntary arbitrators of the National Conciliation and Mediation Board of the Department of Labor and Employment.
 Defendants' exh. 2A.

Edith T. Amizola, Dominador's wife, was appointed to represent Dominador as curatrix in an interdiction proceeding. Amizola filed an action in the 25th Judicial District Court for the Parish of Plaquemines, State of Louisiana, against Dolphin; the M/V ILENAO; West of England Shipowners Mutual Insurance Association, a protection an indemnity association that provided P & I insurance; and Carras Hellas, S.A., the manager for Dolphin. The complaint alleges claims of negligence under the Jones Act, 46 U.S.C.App. § 688, and unseaworthiness and maintenance and cure under the general maritime law.

The defendants removed the case to federal court, asserting that the case is removable under 9 U.S.C. § 205 because the claim relates to an arbitration agreement governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the Convention).[3] The defendants filed a motion to stay the litigation and compel arbitration. Amizola filed a motion to remand the case to state court.

## II. DISCUSSION

### A. Motion to remand

 Amizola contends that removal was improper because it was untimely, the Jones Act prohibits removal of seamen's claims, the forum selection clause contra-

venes public policy, the arbitration provision is not valid, and seaman employment contracts are exempt from coverage under the Convention.

### 1. Subject matter jurisdiction under the Convention

Amizola acknowledges that the Convention provides original jurisdiction in federal court if certain criteria are met. Amizola argues, however, that the Convention does not provide subject matter jurisdiction to support removal of this case because the forum selection clauses violate La.Rev.Stat. 23:921(A)(2),[4] which reflects Louisiana's public policy against forum selection clauses in employment contracts.

Under § 203 of the Convention, "[a]n action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States . . . shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy." The defendants removed the action pursuant to 9 U.S.C. § 205, which provides:

> Where the subject matter of an action or proceeding pending in a state court relates to an arbitration or agreement or award falling under the convention, the defendant or the defendants may, at any

---

Section 31 provides the law applicable to claims as follows:

> Any unresolved dispute, claim or grievance arising out of or in connection with this Contract, including the annexes thereof, shall be governed by the laws of the Republic of the Philippines, international conventions, treaties and covenants where the Philippines is a signatory.

*Id.*

**3.** "Congress ratified the Convention in 1970 to provide United States citizens predictable enforcement of arbitral contracts in foreign courts." *Beiser v. Weyler,* 284 F.3d 665, 666 n. 2. "Congress implemented the Convention at 9 U.S.C. §§ 201–208." *Id.*

**4.** La.Rev.Stat. § 23:921(A)(2) provides:

> The provisions of every employment contract or agreement, or provisions thereof, by which any foreign or domestic employer or any other person or entity includes a choice of forum clause or choice of law clause in an employee's contract of employment or collective bargaining agreement, or attempts to enforce either a choice of forum clause or choice of law clause in any civil or administrative action involving an employee, shall be null and void except where the choice of forum clause or choice of law clause is expressly, knowingly, and voluntarily agreed to and ratified by the employee after the occurrence of the incident which is the subject of the civil or administrative action.

time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending.

■ "[W]henever an arbitration agreement falling under the Convention could conceivably affect the outcome of the plaintiff's case, the agreement 'relates to' the plaintiff's suit." *Beiser*, 284 F.3d at 669. "[A]s long as the defendant claims in its petition that an arbitration clause provides a defense, the district court will have jurisdiction to decide the merits of that claim." *Id.* at 671–72. "[E]asy removal is exactly what Congress intended in § 205." *Id.* at 674.[5]

In *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 1913, 32 L.Ed.2d 513 (1972), the Supreme Court held that forum selection clauses[6] in international agreements "are *prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." A clause may be shown to be unreasonable if it "would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." *Id.* at 1916.

Louisiana has expressed a public policy against forum selection clauses in employment contracts. In *Sawicki v. K/S STAVANGER PRINCE*, 802 So.2d 598, 606 (La.2001), the Supreme Court of Louisiana stated Louisiana's public policy as follows:

Louisiana Revised Statute 23:921(A)(2) is a strong expression of Louisiana public policy concerning forum selection clauses wherein the legislature clearly intended to allow Louisiana courts to adjudicate the claims of plaintiffs who have properly invoked their jurisdiction. Thus, suits validly filed in this state can remain here, despite forum selection clauses to the contrary unless the clause was expressly, knowingly, and voluntarily entered into and ratified after the occurrence of the incident which gives rise to the litigation.... The requirement ... is a reasonable condition, and is appropriately geared toward Louisiana's public policy decision to allow its state courts to adjudicate claims brought within its jurisdiction.

The court finds that the Convention, which incorporates the Federal Arbitration Act, preempts the provisions of La.Rev. Stat. 23:921 which invalidate employment agreements with arbitration clauses.[7] The

---

5. Removal under § 205 does not interfered with state courts as much as ordinary removal. *See Beiser*, 284 F.3d at 674. Under § 205 the court will resolve the arbitration issue early enough to remand the case to state court if there are no other grounds for federal jurisdiction." *Id.* at 675.

6. Foreign arbitration clauses are a subset of foreign forum selection clauses in general. *Haynsworth v. The Corporation*, 121 F.3d 956, 963 (5th Cir.1997).

7. In *Dahiya v. Talmidge Int'l, Ltd.*, 2002 WL 31962151 (E.D.La. Oct.11, 2002) (unpublished), a case removed from Louisiana state court under § 205, the court granted the plaintiff's motion to remand and denied the defendant's motion to compel arbitration and

stay. The court found that the forum selection clause in Dahiya's employment contract was invalid because it contravenes Louisiana's express policy against forum selection clauses in La.Rev.Stat. § 23:921 and as expressed by the Supreme Court of Louisiana. The Court of Appeals for the Fifth Circuit declined to review the remand order because review "even of egregiously mistaken district court remands" was foreclosed under 28 U.S.C. § 1447(d). The Court of Appeals stated that it might reject the argument for remand if it could review that argument because it closely resembled the argument for remand disapproved in *Beiser*. In *Lejano v. K.S. Bandak*, No. 00–2990 at 2 n. 1 (E.D.La. May 27, 2004) (unpublished), the district court in *Dahiya* stated: "Although the Court lacks jurisdiction to vacate its earlier ruling

Supreme Court has recognized that federal policy favoring arbitration "applies with special force in the field of international commerce." *Francisco v. STOLT ACHIEVEMENT MT,* 293 F.3d 270, 272–73 (5th Cir.2002)[8] (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)). In *Bremen,* the Supreme Court stated that the "freely negotiated private international agreement" should be given full effect because the contracting parties "sought to provide for a neutral forum for the resolution of any disputes arising during the tow." 92 S.Ct. at 1915. The Supreme Court stated that the "elimination of all such uncertainties by agreeing in advance on a forum acceptable to both parties is an indispensable element in international trade, commerce, and contracting." *Id.*

In *Southland Corp. v. Keating,* 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984), the Supreme Court considered whether the California Franchise Investment Law, under which a contract for arbitration under the Federal Arbitration Act was invalidated, conflicted with federal law.[9] The Supreme Court held that "the California Franchise Investment Law directly conflicts with § 2 of the Federal Arbitration Act and violates the Supremacy Clause" and that "Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements." *Id.* at 858, 861.

■ Accordingly, international employment agreements with arbitration clauses are not rendered invalid by La.Rev.Stat. 23:921, and the court has jurisdiction under § 205 because the subject matter of the lawsuit relates to an arbitration agreement.

### 2. Jones Act prohibits removal

■ Amizola contends that removal is improper because the "savings to suiters clause" of the Jones Act allows a seaman who suffers personal injury in the course of his employment to elect to maintain an action in federal court or state court.

■ "It is settled that as a general rule Jones Act cases are not removable." *Fields v. Pool Offshore, Inc.,* 182 F.3d 353,

granting remand in *Dahiya,* after further review of the Supreme Court's ruling in *M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) and its reasoning in *Southland Corp. v. Keating,* 465 U.S. 1, 10, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984), the Court finds that its ruling in *Dahiya* was incorrect." Prior to the Court of Appeals' decision in *Dahiya* and the district court's clarification in *Lejano,* another judge of this court reached a contrary decision in *Lim v. Offshore Specialty Fabricators, Inc.,* 2003 WL 193518, No. 02–2126 (E.D.La. Jan. 28, 2003), concluding that the forum selection clause of a standard POEA contract violated Louisiana public policy.

**8.** In *Francisco,* the Court of Appeals affirmed the district court's denial of the plaintiff's motion to remand the case to state court. 293 F.3d at 270. In *Cagata v. General Charterers, Inc.,* No. 01–2425 (E.D.La. Aug. 30, 2002), this court rejected the argument that La.Rev.Stat. 23:921A(2) renders the forum selection clause in a standard Philippine employment contract invalid. This court denied the plaintiffs' motion to remand, stating that *Francisco* governed the case because *Francisco* postdated the Louisiana statute by three years and was decided six months after *Sawicki.*

**9.** Title 9 of the United States Code has two chapters: Chapter 1 contains the Federal Arbitration Act, and Chapter 2 is the Convention Act. The Federal Arbitration Act creates substantive law, not federal question jurisdiction. *Southland,* 104 S.Ct. at 861 n. 9. In this case, jurisdiction to determine arbitration is asserted pursuant to § 205 of the Convention Act. The Federal Arbitration Act "applies to actions and proceedings brought under [the Convention Act] to the extent that [Chapter 1] is not in conflict with [Chapter 2] or the Convention as ratified by the United States." 9 U.S.C. § 208.

356 (5th Cir.1999). "The Jones Act, 46 U.S.C.App. § 688, incorporates general provisions of the Federal Employers' Liability Act, and the latter expressly bars removal of suits thereunder." *Id.* (citing 28 U.S.C. § 1445(a)).

However, Dominador signed a contract stating that claims and disputes arising from his employment, including personal injury claims, are subject to arbitration in the Philippines. The Convention Act provides that a court may direct that arbitration in accordance with the agreement. *See Francisco,* 293 F.3d at 272–73; 9 U.S.C. § 206. The Convention and the Convention Act implementing the Convention do not recognize an exception for seamen employment contracts, notwithstanding the savings to suitors clause. *Id.* at 272, 274, 276. "[T]hey recognize that the only limitation on the type of legal relationship falling under the Convention is that it must be considered 'commercial.'" *Id.* An employment contract is considered commercial. *Id.* Accordingly, a claim under the Jones Act does not defeat removal under the Convention Act.

### 3. Seaman employment contracts

■ Amizola contends that Chapter 1 of Title IX, the General Provisions of the Arbitration Act, specifically excepts seamen employment contracts from Title IX. Amizola argues that, although the Arbitration Act applies to the Convention Act only to the extent that there is no conflict with the Convention Act, no language in the Convention Act creates a conflict with the Arbitration Act's exclusion of seamen employment contracts from the Convention.

Section 2 of the Arbitration Act states that arbitration provisions are valid "in any maritime transaction or a contract evidencing a transaction involving com-

merce." 9 U.S.C. § 2. However, § 1 of the Arbitration Act excludes "contracts of employment of seaman." 9 U.S.C. § 1. In *Francisco,* the Court of Appeals defined the scope of the Convention Act as to seamen employment contracts, holding:

> This exclusion of seamen employment contracts in the Arbitration Act, however, conflicts with the Convention Act and "with the Convention as ratified by the United States" under § 203 of the Convention Act, and therefore is not applicable to the Convention Act.... Neither the Convention nor the limiting language ratifying the Convention contemplate any exception for seamen employment contracts or employment contracts in general. While the ratification language expresses an intent to limit the reach of the Convention to *commercial* relationships, there is no indication that employment contracts or seamen employment contracts are not considered "commercial."

> . . . . .

> In short, the language of the Convention, the ratifying language, and the Convention Act implementing the Convention do not recognize an exception for seamen employment contracts. On the contrary, they recognize that the only limitation on the type of legal relationship falling under the Convention is that it must be considered "commercial," and we conclude that an employment contract is "commercial."

*Francisco v. Stolt Achievement MT,* 293 F.3d at 274.

Accordingly, the court finds that the seamen employment contracts are not excepted under the Convention Act.

### 4. Timeliness of removal

■ Amizola contends that the defendants notice of removal was untimely under 28 U.S.C. § 1446(b).[10] She argues

---

**10.** 28 U.S.C. § 1446(b) provides:

The notice of removal of a civil action or proceeding shall be filed within thirty days

that the defendants agreed by letter of undertaking dated July 1, 2004, to waive personal service, the state court action was filed on July 2, 2004, and the defendants filed the notice of removal on August 10, 2004, more than thirty days after receiving the initial pleading.

Section 205, relating to removal of Convention cases specifically, allows removal of proceedings pending in state court which relate to an arbitration agreement award falling under the Convention at any time before trial, and the thirty day limitation of § 1446(b) does not apply. *See Acme Brick v. Agrupacion Exportadora de Maquinaria,* 855 F.Supp. 163, 166 (N.D.Tex.1994) (citing *McDermott Int'l v. Lloyds Underwriters of London,* 944 F.2d 1199, 1212 (5th Cir.1991)) (comparing removal under § 205 and § 1446(b)). Removal of this Convention case was timely under § 205.

### 5. Conclusion

The court finds that the subject matter of Amizola's lawsuit relates to an arbitration agreement under the Convention, and removal under § 205 was proper. The motion to remand the case to the 25th Judicial District Court for the Parish of Plaquemines, State of Louisiana, is denied.

### B. Motion to stay litigation and compel arbitration

■ The defendants contend that the contract governing Dominador's employment aboard the M/V ILENAO requires arbitration of his claims. The defendants argue that the court should compel Amizola to arbitrate this dispute under 9 U.S.C.

§ 206 and stay this suit pending arbitration under 9 U.S.C. §§ 3 and 208.

■ Section 206 provides:

A court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States. Such court may also appoint arbitrators in accordance with the provisions of the agreement.

The Convention "contemplates a very limited inquiry by courts when considering a motion to compel arbitration." *Francisco,* 293 F.3d at 273. The court should compel arbitration if the following four factors are present:

(1) there is an agreement in writing to arbitrate the dispute,

(2) the agreement provides for arbitration in the territory of a Convention signatory,

(3) the agreement arises out of a commercial legal relationship, and

(4) a party to the agreement is not an American citizen.

*Id.*

Amizola contends that the arbitration provision is not valid because it does not provide for arbitration in the territory of a Convention signatory, 9 U.S.C. § 206. Amizola contends that sections 29 and 30 of the employment contract states the choice of law that is to be used in any unresolved dispute, it does not state where such claims shall be heard, and it is silent as to the identity of the "voluntary arbitrator or panel of arbitrators."

The court finds that the POEA agreement provides for arbitration in the Philip-

---

after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has been filed in court and is not required to be served on the defendant, whichever period is shorter.

pines. Section 29 of the POEA sets forth the manner of submitting a claim or dispute as follows. If the dispute is covered by a collective bargaining agreement, the arbitration proceeds before the voluntary arbitrator or panel of arbitrators. The affidavit of Ruben T. DelRosario states that the arbitrator or panel of arbitrators is accredited by the National Conciliation and Mediation Board of the Department of Labor and Employment in the Philippines. *See* Defendants' exh. D, ¶ 1. If there is no collective bargaining agreement, arbitration is conducted before either the National Labor Relations Commission, an agency of the Department of Labor and Employment in Quezon City, Republic of the Philippines, or the voluntary arbitrator of panel of arbitrators of the National Conciliation and Mediation Board of the Department of Labor and Employment. *Id.* at ¶¶ 1–2.

Accordingly, Dominador signed a written employment contract, and the arbitration provision provides for arbitration of claims, whether covered by a collective bargaining agreement or not, in the Philippines as designated by the Department of Labor and Employment Further, the claims are governed by the laws of the Philippines, international conventions, and treaties and covenants where the Philippines is a signatory. The Philippines and the United States are signatories to the Convention. 9 U.S.C. § 201 (note following text). The employment contract is a commercial contract, and none of the parties are American citizens.

Because all of the elements to compel arbitration are met, the motion to stay the litigation and to compel arbitration is granted.